# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* PARKER, Minors.

UNPUBLISHED
September 13, 2018

No. 341958
Wayne Circuit Court
Family Division
LC No. 17-000827-NA

Before: SWARTZLE, P.J., and JANSEN and O'BRIEN, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to her minor children, IMP and PIP, under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (g), (j), (k)(*iii*), (*iv*), and (*v*).[1] We affirm.

## I. BACKGROUND

Respondent is the biological mother of three children, IMP, PIP, and KCP. At all times relevant to this appeal, respondent and her children lived in a single home with many of their relatives. Although the number of residents in the home fluctuated, at the time of the children's removal, a total of five adults and five children cohabited the home. The children did not have defined sleeping quarters or proper bedding for the children and marijuana was used in the home. Indeed, two of respondent's children tested positive for marijuana at birth.

In 2015, respondent and her aunt, Nicole Horton, and their respective children and partners were the only residents of the home. Shortly after PIP's birth that year, respondent left her children in Horton's care while she went to the store. Approximately 10 minutes after she had left, Horton called respondent to inform her that PIP was not breathing. Respondent returned home and eventually an ambulance took the child to the hospital. At the hospital, doctors informed the family that they could not determine why PIP had stopped breathing, but noted that she was "slightly dehydrated." PIP was hospitalized for two weeks, during which a bruise was found on her back. Child Protective Services (CPS) investigated the incident, but did not substantiate any allegations of abuse. PIP eventually returned home and no relevant

---

[1] MCL 712A.19b has been amended, effective June 12, 2018. See 2018 PA 58.

incidents were reported until 2016, at which time CPS visited respondent's home and found drugs in a plastic bag.

In 2017, respondent took KCP for a wellness check-up, at which the doctor found that KCP was dehydrated and directed respondent to take the child to the hospital "to receive an IV." Two days after the dehydration incident, respondent again left her children in Horton's care while she attended job training. When respondent returned, she found KCP alone on the porch of the home in a car seat. Nothing in the record indicates the reason why KCP was left on the porch by himself. KCP was making gasping sounds which reminded respondent of the breathing issues PIP had a couple years prior. Thus, respondent took KCP to the hospital.

At the hospital it was discovered that KCP had a perforated bowel, an odd-shaped bite mark, and several skull fractures indicating blunt-force trauma to the head. KCP eventually died of his injuries two days later. No adult could explain KCP's injuries, though several were present in the home. While some of the children attempted to take responsibility for KCP's injuries and gave varying explanations for how the injuries occurred, KCP's injuries were inconsistent with these explanations. A medical examiner ruled KCP's death a homicide and noted that not all of KCP's injuries "took place within that short time frame that [respondent] was out of the home." The children's caseworker considered the report evidence that "the continuous suspected child abuse had been going on for a long period of time."

On the day of KCP's death, petitioner filed a custody petition seeking termination of respondent's parental rights; the petition was authorized and the children were placed in the care of an aunt. Later, respondent pleaded no contest to the allegations in an amended petition, stipulating to jurisdiction and statutory grounds. In making its best-interest determination, the trial court stated:

> [KCP] is deceased. [Respondent] left [KCP] in the care of another person, the child sustained injuries that caused his death. No one was able to provide an explanation for the injuries that [KCP] sustained. And the Court acknowledges that [IMP and PIP] were not injured in any way, shape or form; however the Court did look at how [respondent] failed to protect her one child from the injuries and you have to determine how [respondent] may treat her other children. These children have been indirectly affected by [respondent's] inaction in this case and the Court is going to find by a preponderance of the evidence, that based on that, it is in the best interest of [IMP and PIP] to terminate [respondent's] parental rights.

The trial court believed respondent should have been on notice that she needed to be a better parent when PIP suffered from dehydration in 2015 and that respondent had failed to protect KCP. According to the trial court, petitioner had failed this family, and the trial court was "not going to do the same thing and wait for another child to be injured or killed." The trial court noted the children's relative placement, but concluded that termination of respondent's parental rights was in their best interests.

This appeal followed.

## II. ANALYSIS

*Respondent Has Waived Any Statutory-Grounds Challenge.*  On appeal, respondent first argues that statutory grounds did not exist to terminate her parental rights to the minor children. Respondent, however, entered a no-contest plea to the amended petition, stipulating that statutory grounds existed to terminate her parental rights.  Respondent does not argues that this plea was not accurate or that it was not knowingly, understandingly, or voluntarily made.  *In re Judson*, 294 Mich App 261, 264; 817 NW2d 115 (2011); MCR 3.971.  Accordingly, respondent has waived any challenge to the statutory grounds supporting the termination of her parental rights.

*Petitioner Was Not Required to Provide Reunification Services.*  Respondent next argues that termination of her parental rights was improper because she was not offered reunification services.  "When a child is removed from the parents' custody, the petitioner is required to make reasonable efforts to rectify the conditions that caused the child's removal by adopting a service plan." *In re Fried*, 266 Mich App 535, 542; 702 NW2d 192 (2005) (cleaned up).  Petitioner has the "responsibility to expend reasonable efforts to provide services to secure reunification." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012).  An absence of reasonable efforts to provide services aimed at reunification may render termination premature.  *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010).  "However, the petitioner is not required to provide reunification services when termination of parental rights is the agency's goal." *In re Moss*, 301 Mich App 76, 91; 836 NW2d 182 (2013) (cleaned up).  Here, petitioner sought termination in its initial petition and was thus not required to provide respondent with reunification services.

*Termination Was In the Children's Best Interests.*  Finally, respondent argues that termination of her parental rights was not in the children's best interests.  "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). "Whether termination of parental rights is in the best interests of the child must be proven by a preponderance of the evidence." *In re Moss*, 301 Mich App at 90 (cleaned up).  "The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014).  "To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include 'the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home.' " *Id.*, quoting *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012).  Other relevant factors include any "history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id.* at 714.  Under the doctrine of anticipatory neglect, "how a parent treats one child is certainly probative of how that parent may treat other children." *In re LaFrance Minors*, 306 Mich App 713, 730; 858 NW2d 143 (2014) (cleaned up).

Evidence was presented that respondent had knowledge that Horton was incapable of providing proper care to respondent's children, yet respondent continued to leave her children in Horton's care.  Despite evidence of "continuous suspected child abuse [that] had been going on for a long period of time," respondent could not explain how KCP obtained his injuries.

Moreover, despite several adults being present in the home, no one could explain how KCP received his injuries or why KCP was left alone on the porch. The lack of an explanation demonstrates a lack of supervision within the home that ultimately led to the death of a child. Additionally, at times, both KCP and PIP became dehydrated to the point where they required medical attention and two of respondent's three children tested positive for marijuana at birth. The children lived in an overcrowded home where they did not have proper sleeping arrangements. Thus, the record shows that respondent's inattentiveness to her children's needs, the condition of their living environment, and the qualifications of their caregivers ultimately led to KCP's death. The trial court did not clearly err by finding that termination of respondent's parental rights was in her children's best interests.

Affirmed.

/s/ Brock A. Swartzle
/s/ Kathleen Jansen
/s/ Colleen A. O'Brien

-4-